CAMDEN SAFE DEPOSIT AND TRUST COMPANY AND GWENDOLYN TAYLOR LEONARDS, EXECUTORS UNDER THE WILL OF G. WILBUR TAYLOR, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67265. Promulgated April 3, 1934.

*Harry S. Mesirov, Esq.*, and *Thomas C. Leonards, Esq.*, for the petitioners.

*L. S. Pendleton, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency in Federal estate taxes in the amount of $18,953.54. The single question before the Board for decision is whether or not $384,145.89 has been properly included by the Commissioner as a part of the decedent's gross estate. The facts have been stipulated.

George E. Taylor, the father of G. Wilbur Taylor, died in 1923 while residing in Camden, New Jersey. By the terms of his will he gave to his wife, Emma J. Taylor, a life estate in all of his property, real, personal, and mixed. The following quotations are from his will:

THIRD: In case the income from my estate shall not be sufficient to maintain my said wife in the way she is accustomed to live she may with the advice and consent of my son and daughter sell any portion of my estate and use the proceeds thereof for her benefit.

FOURTH: On the death of my wife her funeral expenses and debts shall be paid by my estate, but this provision shall in no way be construed as a charge upon or interfere with the free and absolute disposal by my executors of my real or personal property.

SEVENTH: On the death of my said wife all the rest, residue and remainder of my estate, real, personal and mixed of whatsoever kind and wheresoever situate, shall be divided into two equal shares or parts, one of which I give, devise and bequeath to my son, G. Wilbur Taylor, and the other I give, devise and bequeath to my daughter Charlotte T. White. * * * The devises or bequests to my son or daughter under the provisions of this and the preceding clauses of my Will to take effect upon the death of my said wife, shall in case of the death of my said son or daughter in the lifetime of my said wife go to such person or persons as such deceased son or daughter by last Will and Testament may direct or in the absence of any provision therefor then to the child or children of such deceased son or daughter * * * but this provision shall in no wise interfere with the provisions of the third clause of this my Will which permits the use of such part of my estate for the use of my wife.

G. Wilbur Taylor died on September 23, 1930, while residing in Camden, New Jersey. He was survived by his only child Gwendolyn Taylor Leonards and by his mother, Emma J. Taylor, then 87 years of age. In his will he stated that he exercised the power given him under his father's will and directed " that all such devises and bequests over which I have the power of disposal under his said will shall go to and be paid to my daughter Gwendolyn Taylor Leonards." His executors did not include in the gross estate as reported in their Federal estate tax return any amount as the value of property passing under a power of appointment. The Commis-

sioner of Internal Revenue determined that the present value at the time of the death of G. Wilbur Taylor of that portion of the estate of his father over which he had a power of appointment payable upon the death of a person 87 years of age was $384,145.89. He added the latter amount to the gross estate.

The following provision of the Revenue Act of 1926 is applicable:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, \* \* \*.

The petitioners' first point is that property over which a person has a power of appointment is not a part of his estate under the law of New Jersey and that an appointee takes not from the donee of the power, but from the donor. Their second point is that since the decedent by his will directed that the property over which he had the power of appointment should go to his daughter, who was the person who would have gotten the property if he had said nothing, therefore what he did was a mere empty gesture and not in fact an exercise of his power of appointment. These points do not help the petitioners' case, since the Board and the courts have held under similar circumstances that the property is nevertheless subject to Federal estate tax. *Edward J. Hancy, Executor*, 17 B.T.A. 464; *Cortlandt F. Bishop, Executor*, 23 B.T.A. 920; *Joseph Walker Wear et al., Executors*, 26 B.T.A. 682; affd., 65 Fed. (2d) 665; *Fidelity-Philadelphia Trust Co.* v. *McCaughn*, 34 Fed. (2d) 600; certiorari denied, 280 U.S. 602; *Mary M. Lee, Executrix*, 18 B.T.A. 251; affd., 57 Fed. (2d) 399; certiorari denied, 286 U.S. 563.

The petitioners next contend that the decedent's power of appointment was not a general power in that (a) he could appoint to individuals only, and (b) the property over which he had the power could be consumed to maintain his mother, the life tenant, in the way she was accustomed to live, and also to pay her funeral expenses and debts, under the third and fourth paragraphs of his father's will. The decedent had power to appoint to " such person or persons " as he might direct in his last will and testament. The Board and the courts have frequently held that the use of such words creates a general power of appointment. *Edward J. Hancy, Executor, supra; Cortlandt F. Bishop, supra; Fidelity-Philadelphia Trust Co.* v. *McCaughn, supra; In re Forney's Estate*, 280 Pa. 282; 124 Atl. 424; *In re Twitchell's Estate*, 284 Pa. 135; 130 Atl. 324. Furthermore, digesters, textbook writers, and the courts, in defining a general power of appointment, have frequently used the word " person " in an all-inclusive sense referring to any appointee having

the capacity to take. Nevertheless, the petitioners argue that the words "person or persons" do not include a corporation, a state, or the United States, and conclude that the power which the decedent had was not a general power. They point out that in many cases where the words "person or persons" were used and it was held that a general power was created, the precise point which they are raising was not brought to the attention of the court. However, they fail to call our attention to any case where such a matter was brought to the attention of a court in which the court held that the donor did not intend to grant a general power. Since the briefs were filed in this case, the Board has decided a case, which is directly in point, contrary to the petitioners' contention. *J. Gilmore Fletcher*, 29 B.T.A. 503. In that case *Farmers Loan & Trust Co.* v. *Shaw*, 107 N.Y.S. 337; affirmed without opinion by the Appellate Division, 111 N.Y.S. 1118, was cited as authority on this point. A Canadian decision to the same effect is *In re McDonagh*, 18 Ont. W.N. 154. No contrary decisions have come to our attention. Cases involving the meaning of the word "person" in statutes and constitutions are not very helpful because intent there may depend upon so many factors not present here. The intention of George E. Taylor must be gathered from the terms of his will. The evidence does not show that the donor intended to restrict his son to particular objects or beneficiaries, but indicates the contrary. The petitioners do not rely upon the fact that the decedent could exercise the appointment only by will. Cf. *Whitlock-Rose* v. *McCaughn*, 21 Fed. (2d) 164. The fact that some part or all of the property subject to the power might have been consumed in maintaining the life tenant and in paying her funeral expenses and debts does not prevent this power from being a general one. As Judge Kirkpatrick said in the case of *Fidelity-Philadelphia Trust Co.* v. *McCaughn*, *supra:* "The important thing is the latitude of the donee's power of disposition rather than the quantum of the interest which he may dispose of or the time of its vesting." When he made that statement he did not have in mind a set of facts such as is here present, but his statement is nevertheless applicable. The decedent had a general power of appointment.

Finally the petitioners argue that the value of the property passing under the decedent's power of appointment is unascertainable and for this reason the Commissioner should not have included in the gross estate of the decedent any amount as the value at the time of his death of property passing under the power. They say that this value was unascertainable for two reasons. First, the life tenant had the right under paragraph 3 of the will of George E. Taylor to sell any portion of his estate and to use the proceeds thereof for her benefit in case the income from his estate should not be sufficient to

maintain her in the way in which she was accustomed to live. Second, under paragraph 4 of the will of George E. Taylor, the funeral expenses and debts of his wife at the time of her death were to be paid from his estate. The value of the remainder passing under the son's power of appointment was susceptible of ascertainment with reasonable accuracy in so far as it was affected by paragraph 3 of the will of George E. Taylor and by the provision for the payment of the funeral expenses of his wife. The question of invading the principal to maintain the wife was not left entirely to her discretion. A standard capable of being stated in definite terms of money was fixed by the words " in the way she is accustomed to live." The amount of the principal necessary to maintain her and to pay her funeral expenses could have been estimated from known data with reasonable accuracy. " There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." *Ithaca Trust Co.* v. *United States*, 279 U.S. 251. See also *First Nat. Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186; *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 710; *Herron* v. *Heiner*, 24 Fed. (2d) 745; *Mercantile Trust Co., Executor*, 13 B.T.A. 85; affd., 43 Fed. (2d) 39.

The principal contention of the petitioners on the question of value is based upon the provision of the will of George E. Taylor directing that his wife's debts at the time of her death shall be paid from his estate. They contend that under this provision all or some unascertainable part of the principal might be taken to pay the debts of the wife, and, therefore, any attempt to fix a present value for the remainder would constitute the wildest kind of guessing and would not be based upon any known or ascertainable facts. They assume for the purpose of their argument, that the provision for the payment of the wife's debts would include not only such debts as she had when her husband died and those thereafter contracted by her in order to maintain herself in the way she was accustomed to live, but also all other debts, no matter how contracted. Counsel for the respondent did not cover this point in his oral argument and he filed no brief. If, however, George E. Taylor intended, by this provision of the will, to provide only for the payment of such debts of his wife as she had at the time of his death, plus those she might reasonably contract in maintaining herself in the way in which she was accustomed to live, then no further discussion of this provision of the will is necessary, since it would create no greater difficulties than paragraph 3 of the will. Paragraph 4 of the will of George E. Taylor, standing alone, might be interpreted as giving his wife indirectly the power to consume his estate by contracting debts regardless of the purpose for which the debts were contracted. But it does not stand alone, and the intention of

the testator must be gathered from all of the provisions of the will. The widow, during her lifetime, could only invade the principal in case the income from the estate was not sufficient to maintain her in the way in which she was accustomed to live, and even in that case she could only invade it with the advice and consent of the son and daughter. The father obviously intended to provide not only for his wife, but also for his children. The will should not be interpreted to permit the widow to do indirectly that which she was clearly prohibited from doing directly—that is, consume the principal for purposes other than her maintenance.

The life tenant was 87 years of age when her son died and appointed to her granddaughter. The gross estate was worth $436,-410.40 at that time. We can not say as a matter of law that the property passing under the power had no present value or that that value is unascertainable with reasonable certainty from known data. Cf. *In re Dorgan's Estate*, 237 Fed. 507; *Tax Commissioner of Ohio* v. *Oswald*, 109 Ohio, 36; 131 N.E. 678. The Commissioner has determined that value to be $384,145.89. No one could determine with absolute certainty how much property would ultimately pass under the power, because the life of the life tenant, her needs, and the amount of her debts could only be approximated. But in this case one of these factors could be approximated about as accurately as another. If the petitioners did not want to accept the value determined by the Commissioner, they should have offered proof of a lesser value. Since they offered none, the Commissioner's value is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*