NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12812

M. CHRISTINE SHAFFER, executrix,[1] vs.  COMMISSIONER OF REVENUE.


Suffolk.      February 10, 2020. - July 10, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Taxation, Estate tax, Trust.  Trust, Taxation.  Due Process of Law, Taxation.  Words, "Transfer," "Massachusetts gross estate."



Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.


Leo J. Cushing (Jenna R. Wolinetz also present) for the taxpayer.
Celine E. de la Foscade-Condon (John J. Connors, Jr., also present) for Commissioner of Revenue.


CYPHER, J.  This case concerns whether the intangible assets in a qualified terminable interest property (QTIP) trust, which was created by the predeceasing spouse in New York, are

_____

[1] Of the estate of Adelaide P. Chuckrow.

subject to the Massachusetts estate tax, G. L. c. 65C, § 2A (a), when the surviving spouse died domiciled in Massachusetts. Adelaide P. Chuckrow (decedent), the lifetime income beneficiary of the QTIP trust created in New York by her late husband Robert Chuckrow (Robert), died domiciled in Massachusetts in 2011.  The decedent's estate (estate) included the value of the QTIP trust assets in computing her Federal estate tax return, but not in computing her Massachusetts estate tax return.  The Commissioner of Revenue (commissioner) selected the estate's Massachusetts return for audit and assessed an additional Massachusetts estate tax of $1,809,141.88, based on the value of the QTIP assets. The Appellate Tax Board (board) upheld the assessment.  The key issue before us is whether the intangible assets in a QTIP trust created by the predeceasing spouse when he was domiciled in a different State are includable in the gross estate of the Massachusetts domiciliary decedent for purposes of calculating the Massachusetts estate tax under § 2A (a).  We affirm the decision of the board that there is not a constitutional or a statutory barrier to the assessment of Massachusetts estate tax, on the value of the QTIP assets.

Background.  1. Statutory framework.  We begin with an overview of the statutory framework, in order to provide context to the following discussion.

a.  <u>Federal estate tax and Massachusetts estate tax</u>.  An estate tax is a tax on the privilege of transferring property at death.  See <u>Knowlton</u> v. <u>Moore</u>, 178 U.S. 41, 56 (1900).  Internal Revenue Code § 2001(a) sets forth the Federal estate tax:  "A tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States."  26 U.S.C. § 2001(a).  General Laws c. 65C, § 2A (<u>a</u>), sets forth the Massachusetts estate tax.  Following various versions of the Massachusetts estate tax in response to the changes in the Internal Revenue Code, in 2002, the Legislature amended § 2A to use a "sponge tax" calculation[2] based upon the Federal credit for State death taxes that would have been allowable to a decedent's estate in 2000.  See G. L. c. 65C, § 2A (<u>a</u>); St. 2002, c. 186, §§ 28, 34; St. 2002, c. 364, §§ 10, 23.  See also Department of Revenue, Technical Information Release 02-18 (Nov. 6, 2002) ("reference point Massachusetts uses to tie itself to the [Internal Revenue] Code for sponge tax purposes is a fixed date instead of a reference point that automatically incorporates any federal changes.  Thus, due to the decoupling legislation, the Massachusetts sponge tax is now tied to the [Internal Revenue] Code as in effect on December 31,

---

[2] Under a "sponge tax," the State tax liability is determined based on the Federal estate death tax credit.  See <u>Ward</u> v. <u>Commissioner of Corps. & Taxation</u>, 369 Mass. 3, 4 (1975).

2000").  The Massachusetts estate tax imposes a tax "upon the transfer of the estate of each person dying on or after January 1, 1997 who, at the time of death, was a resident of the commonwealth."  G. L. c. 65C, § 2A (a).

b.  Marital deduction.  The marital deduction allows an estate to deduct from the value of the taxable estate certain property that passes or has passed from a decedent to the decedent's surviving spouse.  26 U.S.C. § 2056(a).  In general, a marital deduction defers the estate tax on the property subject to the marital deduction until the death of the surviving spouse; it does not eliminate the tax liability altogether.  See Estate of Sommers v. Commissioner of Internal Revenue, 149 T.C. 209, 223 (2017).

c.  QTIP trust.  An estate generally may not make use of the marital deduction when conveying terminable interest property (terminable interest rule).  26 U.S.C. § 2056(b)(1).  However, 26 U.S.C. § 2056(b)(7) provides an exception to the terminable interest rule for QTIP.  To become QTIP, (1) the property must pass from the predeceasing spouse, (2) the surviving spouse must have a qualifying income interest for life[3]

---

[3] "The surviving spouse has a qualifying income interest for life if . . . (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and (II) no person has a power to appoint any part of the

in the property, and (3) the executor of the estate of the predeceasing spouse must elect to designate the property as QTIP. 26 U.S.C. § 2056(b)(7)(B). Using a QTIP trust allows for the deferral of the Federal estate tax on the assets used to create the QTIP trust until the surviving spouse dies.[4] See 26 U.S.C. § 2044. See also Estate of Clayton v. Commissioner of Internal Revenue, 976 F.2d 1486, 1491-1493 (5th Cir. 1992) (explaining history of marital deduction and QTIP).

2. Robert's creation of the QTIP trust. Robert died in July 1993, while domiciled in New York.[5] His last will and testament established a trust for the decedent's benefit. The trust qualified for a QTIP trust election under 26 U.S.C. § 2056(b)(7) and under New York law. At the time of Robert's death, the trust assets totaled $844,101.27, and consisted wholly of intangible property, including shares in various companies and a fifty percent limited partnership interest in Chuckrow Smith Associates, L.P.

property to any person other than the surviving spouse." 26 U.S.C. § 2056(b)(7)(B)(ii).

[4] Although not relevant to this appeal, the assets in a QTIP trust would be subject to tax before the surviving spouse's death if the surviving spouse disposed of all or part of the qualifying income interest before his or her death. 26 U.S.C. § 2519.

[5] At the time of Robert's death, the decedent was also domiciled in New York.

The trustees of the trust were the two adult daughters of the decedent and Robert. The decedent did not hold general or limited powers of appointment over the trust assets. The trustees were entitled to the remainder interest of the trust upon the decedent's death.

After Robert's death, his estate filed Federal and New York tax returns.[6] In both returns, the estate reported no tax due, claiming the marital deduction in the full amount of the QTIP assets.

3. Prior proceedings. The decedent died in August 2011, while domiciled in Massachusetts. The estate filed a Massachusetts estate tax return, reporting a tax due of $100,997 and including a payment in that amount. The value of the QTIP assets was not included in the Massachusetts estate tax return, but it was included in the estate's Federal tax return.[7] The estate did not file a New York estate tax return, nor did it pay any New York estate tax.

The commissioner selected the estate's Massachusetts estate tax return for an audit. The commissioner sent the estate a notice of intention to assess and a notice of intention to

---

[6] Robert's estate did not file a Massachusetts tax return.

[7] The estate's Massachusetts return reported a total gross estate of $2,382,148, and the estate's Federal return reported a total gross estate of $15,633,617, the difference being the value of the QTIP assets.

assess work papers, showing the commissioner proposed an additional Massachusetts tax assessment of $1,809,141.88. The additional tax assessment was based on the total gross estate reported on the Federal estate tax return. The commissioner assessed the tax as proposed, and sent the estate a notice of assessment, which included the $1,809,141.88 plus interest. The estate paid the amount assessed.

The estate then filed an abatement application, which the commissioner denied. The estate appealed to the board from the denial of the abatement application. The parties submitted an agreed statement of facts along with their arguments in briefs and oral arguments, and no evidentiary hearing was held.

4. The board's decision. The board issued a decision in favor of the commissioner and subsequently promulgated its findings of fact and report. One of the board's commissioners dissented.

The board ruled that the QTIP assets were subject to tax under G. L. c. 65C, § 2A (a). It disagreed with the two primary arguments raised by the estate: (1) that there was only one transfer of the QTIP assets, which took place when Robert died in New York, and therefore the Massachusetts assessment violates the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights; and (2) that the QTIP assets were not includable in the decedent's estate

because "the definition of 'Massachusetts gross estate' in [G. L. c. 65C, § 1 (f),] excludes QTIP property for which a Federal, but not a Massachusetts, QTIP election was made."

In addressing the estate's constitutional argument and interpreting the term "transfer," the board relied on case law analogous to the present matter, in which courts gave the term a broad construction.  See Fernandez v. Wiener, 326 U.S. 340, 352 (1945); Estate of Brooks v. Commissioner of Revenue Servs., 325 Conn. 705, 733 (2017), cert. denied, 138 S. Ct. 1181 (2018). The board also noted that 26 U.S.C. § 2044(c) provides, in part, that QTIP property "shall be treated as property passing from" the surviving spouse, and that other sections of the Internal Revenue Code treat the surviving spouse as the transferor of the full value of the QTIP property.  See 26 U.S.C. §§ 2044(c), 2519, 2652(a).  The board accordingly determined that for estate tax purposes, there are two transfers of QTIP assets.  The first is "a transfer from the estate of the first-to-die spouse to the surviving spouse when the QTIP election is made," and the second is "a transfer from the estate of the surviving spouse to the designated beneficiaries when the surviving spouse dies." Applying that reasoning to the QTIP assets at issue, the board ruled that constitutional principles were not violated because the second transfer of the QTIP assets occurred in Massachusetts.

In addressing the estate's statutory argument, the board stated that the "fatal flaw" with the estate's analysis that G. L. c. 65C, § 1 (f), "provides that only those QTIP assets for which a Massachusetts deduction was allowed in the estate of the first-to-die spouse are includable in the Massachusetts gross estate of the surviving spouse" was that § 1 (f) defines "Massachusetts gross estate," which is a term "not found in the operative taxing statute, [G. L. c. 65C,] § 2A." The board looked to the Legislature's enactment of § 1 (f), as well as to its enactment of G. L. c. 65C, § 3A, which addresses the Massachusetts election of QTIP treatment, and determined that the § 1 (f), definition of Massachusetts gross estate applies only when the predeceasing spouse makes a Massachusetts QTIP election under § 3A. It therefore concluded that because Robert did not make a Massachusetts QTIP election and there was not any Massachusetts QTIP property (as defined in § 3A), §§ 1 (f) and 3A do not pertain to the estate's Massachusetts estate tax obligation under § 2A (a).[8]

---

[8] The board also rejected the estate's argument regarding potential double taxation and G. L. c. 65C, § 1 (f), concluding, "The [estate] offered no reasoned basis to interpret a statute that prevents double taxation of Massachusetts QTIP property under limited circumstances in a manner that prevents taxation of the QTIP assets where no double taxation is possible and the assets are explicitly and exclusively taxable under [G. L. c. 65C,] § 2A."

The board therefore ruled that the decedent's estate "is taxable under the unambiguous terms of [§ 2A (a)]." The dissenting commissioner concluded that the only transfer of the QTIP assets occurred at the time of Robert's death, and that therefore the commissioner's assessment violated constitutional principles.

The estate filed a timely notice of appeal from the board's decision, and we granted its motion for direct appellate review.

Discussion. 1. Standard of review. In reviewing decisions of the board, "[w]e review conclusions of law, including questions of statutory construction, de novo." Shrine of Our Lady of La Salette Inc. v. Assessors of Attleboro, 476 Mass. 690, 696 (2017), quoting New England Forestry Found., Inc. v. Assessors of Hawley, 468 Mass. 138, 149 (2014). "However, because the board is an agency charged with administering the tax law and has expertise in tax matters, we give weight to its interpretation of tax statutes . . ." (quotation and citation omitted). AA Transp. Co. v. Commissioner of Revenue, 454 Mass. 114, 119 (2009). See Boston Professional Hockey Ass'n v. Commissioner of Revenue, 443 Mass. 276, 285 (2005) ("We will not modify or reverse a decision of the board if the decision is based on both substantial evidence and a correct application of the law").

2.  <u>Constitutionality of the Massachusetts estate tax</u>.  We first address whether the Massachusetts estate tax, G. L. c. 65C, § 2A (<u>a</u>), violates the due process clause of the Fourteenth Amendment and art. 10.  The estate argues that the Massachusetts estate tax violates constitutional principles because it includes property wherever situated.  The estate further contends that the board erred in finding that a transfer occurred upon the death of the decedent, and that therefore Massachusetts did not have a constitutional basis to tax the QTIP trust assets.  The commissioner argues that the Massachusetts estate tax does not violate constitutional principles and that a transfer occurred upon the death of the decedent and, therefore, the decedent's domicil in Massachusetts provided the constitutional basis for Massachusetts to tax the trust assets.  We agree with the board that the Massachusetts estate tax does not violate constitutional principles and that a transfer occurred upon the death of the decedent.

States may only impose an estate tax on tangible property, such as real estate, located within the State's jurisdiction.  See <u>Frick</u> v. <u>Pennsylvania</u>, 268 U.S. 473, 488-492 (1925).  The analysis, however, differs for a State's imposition of an estate tax on intangible property, such as the QTIP assets here, with the decedent's domicil in the State at death forming the requisite nexus for the State to impose the estate tax.  See

Curry v. McCanless, 307 U.S. 357, 366 (1939); Page v. Commissioner of Revenue, 389 Mass. 388, 395 (1983). See also Graves v. Schmidlapp, 315 U.S. 657, 660 (1942) ("Intangibles, which are legal relationships between persons and which in fact have no geographical location, are so associated with the owner that they and their transfer at death are taxable at the place of his domicile . . .").

In addition, "the estate tax as originally devised and constitutionally supported was a tax upon transfers." Fernandez, 326 U.S. at 352. See G. L. c. 65C, § 2A (a) ("A tax is hereby imposed upon the transfer of the estate of each person dying on or after January 1, 1997 who, at the time of death, was a resident of the commonwealth"). See generally Knowlton, 178 U.S. at 56. Therefore, because in the present case the QTIP trust consisted completely of intangible assets, and the decedent was domiciled in Massachusetts at the time of her death in 2011 and was therefore subject to the provisions of § 2A (a), the question presented herein is what constitutes a "transfer" for estate tax purposes.

As the board did in interpreting "transfer," we look to case law analogous to the issue at hand. In Fernandez, 326 U.S. at 342, 352, 355, the United States Supreme Court addressed the scope of what constitutes a transfer in the context of an estate tax levied on the termination of marital community property and

noted that the decedent's death enabled the surviving spouse to have greater rights in the subject property. The Court stated that an estate tax is not limited to literal transfers at death, but "extends to the creation, exercise, acquisition, or relinquishment of any power or legal privilege which is incident to the ownership of property." Id. at 352. In Estate of Brooks, 325 Conn. at 733, the Connecticut Supreme Court used the broad interpretation of the term "transfer" from Fernandez in addressing the issue of Connecticut's ability to tax the value of assets in a QTIP trust. As in the case at hand, in Estate of Brooks, the trust at issue was created by the predeceasing spouse while he was a domiciliary of another State, and then the surviving spouse died as a domiciliary of Connecticut. Id. at 707-708. The estate of the surviving spouse challenged the constitutionality of Connecticut's imposition of an estate tax on the QTIP assets, arguing, in part, that the only transfer of the QTIP assets took place in the other State. Id. at 726. The Connecticut Supreme Court determined that a second transfer of the QTIP assets occurred upon the death of the surviving spouse. Id. at 730-731. In reaching this conclusion, the court stated that "a sovereign may tax the transmutation of legal rights in property occasioned by death." Id. at 729, citing Fernandez, supra at 358. The Connecticut Supreme Court noted that the Fernandez Court's practical approach "looked not to whether

death was the generating source of 'rights,' but rather whether death was the generating source of 'changes in the legal and economic relationships to the property taxed.'" Estate of Brooks, supra at 733, quoting Fernandez, supra at 356-357.

In addition, the Federal QTIP rules create fictional transfers. Although the surviving spouse receives only a lifetime income interest from the predeceasing spouse, the Internal Revenue Code QTIP rules treat property subject to a QTIP election as passing in full from the predeceasing spouse to the surviving spouse, with the property then passing from the surviving spouse. See 26 U.S.C. §§ 2044(c), 2056(b)(7)(A), 2519(a); Estate of Morgens v. Commissioner of Internal Revenue, 678 F.3d 769, 771 (9th Cir. 2012) ("underlying premise of the QTIP regime is that the surviving spouse is deemed to receive and then give the entire QTIP property, rather than just the income interest. The purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property").

In the present case, the decedent's death created a change in the legal relationship among the QTIP assets, the decedent, and the beneficiaries. See Fernandez, 326 U.S. at 355; Estate of Brooks, 325 Conn. at 733. Before her death, the decedent had a lifetime interest in the QTIP assets. See 26 U.S.C.

§ 2056(b)(7)(B).  After her death, her daughters, as the beneficiaries, received a present interest in the QTIP assets. It is this change in legal relationship that occurred upon the death of the decedent that constitutes a transfer for estate tax purposes and brings the QTIP assets within the Massachusetts taxable estate.  See Fernandez, supra at 355; Estate of Brooks, supra at 729, 733.

We therefore agree with the board that two transfers of QTIP property occur for estate tax purposes, with the first occurring when the predeceasing spouse makes the QTIP election and the second occurring upon the death of the surviving spouse. Therefore, the decedent's domicil in Massachusetts at the time of her death, and therefore at the time of the second transfer, provided the connection to the Commonwealth to allow Massachusetts to impose an estate tax on the QTIP assets.

3.  Applicability of definition of "Massachusetts gross estate" in G. L. c. 65C, § 1 (f).  We next address whether the board correctly determined that G. L. c. 65C, §§ 1 (f) and 3A, do not bear upon the estate's Massachusetts estate tax obligation.  The estate argues that the definition of "Massachusetts gross estate" in § 1 (f) should apply to the Massachusetts estate tax, and that therefore the value of the QTIP assets should not be included in the estate.  The commissioner responds that § 1 (f) is not applicable to G. L. c.

65C, § 2A, and that the board correctly interpreted and applied the unambiguous language of § 2A, which requires the inclusion of all assets reported in the Federal gross estate. We agree with the board that § 1 (f) does not apply to the estate's Massachusetts estate tax obligation under § 2A.

We look first to the plain meaning of the statute. See Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008) ("where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent"). General Laws c. 65C, § 1 (f), defines "Massachusetts gross estate."[9] See G. L. c. 65C, § 1 ("When used in this chapter the following words or terms shall have, unless the context clearly indicated otherwise, the following meanings . . .").

The term "Massachusetts gross estate," however, is not used in G. L. c. 65C, § 2A, which is the statute the estate was subject to because the decedent died on or after January 1, 1997. Instead of referring to "Massachusetts gross estate," §

---

[9] "[T]he federal gross estate . . . plus the value of any property (i) in which the decedent had at death a qualifying income interest for life described in [G. L. c. 65C, § 3A (c),] . . . . and (ii) for which a deduction was allowed for Massachusetts estate tax purposes with respect to the transfer of such property to the decedent . . . . The Massachusetts gross estate shall not include the value of any property in which the decedent had a qualifying income interest for life which is not otherwise includible in the Massachusetts gross estate under the first sentence of this paragraph . . . ." G. L. c. 65C, § 1 (f).

2A provides for an estate tax equal to the State tax credit "that would have been allowable to a decedent's estate as computed under Code section 2011, as in effect on December 31, 2000."  G. L. c. 65C, § 2A (a).  See G. L. c. 65C, § 2A (e) ("all references and provisions in this chapter to the Internal Revenue Code or Code, unless the context clearly indicates otherwise, shall be to the Code as in effect on December 31, 2000").

General Laws c. 65C, § 3A, which covers the Massachusetts QTIP election by the predeceasing spouse, and is not at issue here, does utilize the term "Massachusetts gross estate."  G. L. c. 65C, § 3A (b) (providing requirements to qualify as QTIP for Massachusetts estate tax purposes, including that subject property must be "included in the Massachusetts gross estate" of predeceasing spouse).  The Legislature enacted § 3A in 1985, at the same time that it amended G. L. c. 65C, § 1 (f), to address a decedent's qualifying income interest and to refer to § 3A. See St. 1985, c. 711, §§ 6, 12.  While § 3A provides requirements for the predeceasing spouse to make a QTIP election, § 1 (f), in turn, provides that when the surviving spouse who had a qualifying income interest for life, as described in § 3A (c), dies, then only property for which the predeceasing spouse was allowed a Massachusetts deduction will be included in the taxable estate of the surviving spouse.  In

other words, the definition of "Massachusetts gross estate" in § 1 (f) applies only where the predeceasing spouse makes a Massachusetts QTIP election for property that is included in the Massachusetts gross estate of the predeceasing spouse under § 3A.

Because Robert's estate did not make a Massachusetts QTIP election, nor was there otherwise any Massachusetts QTIP property as defined in G. L. c. 65C, § 3A, the board did not err in determining that G. L. c. 65C, §§ 1 (f) and 3A, do not bear upon the estate's Massachusetts estate tax obligation under G. L. c. 65C, § 2A.  Therefore, we look to the plain meaning of § 2A, which requires the inclusion of all assets that the estate reported in the Federal gross estate.[10]  Therefore, the QTIP assets were includable in the estate for purposes of the Massachusetts estate tax.

For the foregoing reasons, we affirm the decision of the board.

So ordered.

---

[10] In addition, the estate's contention that the current Massachusetts estate tax does not eliminate the potential of double taxation is without merit under the present circumstances.  The estate is not subject to double taxation, as the QTIP assets in Robert's estate were not subject to Massachusetts or New York tax before the decedent's death.